UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

FAYE W.,                              )
                                      )
            Plaintiff                 )
                                      )
v.                                    )   No. 1:17-cv-00485-NT
                                      )
NANCY A. BERRYHILL,                   )
Acting Commissioner of Social Security, )
                                      )
            Defendant                 )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of past relevant work as a caregiver and an auto clerk. The plaintiff seeks remand on the basis that the ALJ erred in several respects in weighing the expert opinion evidence of record. *See* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 10) at 3-17. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, Finding 1, Record at 77; that she had the severe impairments of cervical dystonia with head tremors, mild degenerative disc disease of the thoracic spine,

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

degenerative disc disease of the cervical spine at C5-C6 and C6-C7 with facet disease at C3-C4, C4-C5, and C6-C7, and residual right inguinal pain from nerve entrapment surgery, Finding 3, *id*. at 78; that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she could no more than occasionally rotate, flex, or extend her neck, no more than occasionally push or pull with the bilateral upper extremities, frequently reach with the right upper extremity, only occasionally reach with the left upper extremity, no more than occasionally reach overhead with the bilateral upper extremities, frequently handle and finger bilaterally, and needed to avoid excessive vibration, dangerous moving machinery on the work floor, and unprotected heights, Finding 5, *id*. at 82; that she was capable of performing past relevant work as a caregiver and an auto clerk, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 88; and that she, therefore, had not been disabled from May 1, 2013, her alleged onset date of disability, through December 29, 2016, the date of the decision, Finding 7, *id*. at 89. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 404.1520(f);

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service Rulings 1975-1982*, at 813.

## I. Discussion

### A. Background

The record contained five opinions from four experts: that of agency nonexamining consultant Margel Guie, D.O., dated September 25, 2014, *see* Record at 66-68; that of treating primary care physician Sarah B. Shinn, M.D., dated March 18, 2015, *see id*. at 317-20; those of treating physiatrist Peter G. Arabadjis, M.D., dated November 7, 2016 ("First Arabadjis Opinion"), and November 14, 2016 ("Second Arabadjis Opinion"), *see id*. at 533-39; and the undated opinion of a later treating primary care physician, Thomas H. Bugbee, M.D., *see id*. at 540.[2]

The ALJ gave "great weight" to Dr. Guie's opinion that the plaintiff could perform a restricted range of light work with additional environmental limitations, explaining:

> In support of her determination, . . . [Dr. Guie] cited the [plaintiff]'s ability to perform activities of daily living, playing cards, and her improvement with medication. . . . [Dr. Guie] had the opportunity to review the longitudinal medical record[,] and her opinion is consistent with Dr. Arabadjis's assessment from November 7, 2016. In addition, the [plaintiff] did not allege any new impairments after her assessment. Furthermore, the new evidence submitted does not support more limitations.

*Id*. at 86-87.

---

[2] As the plaintiff observes, *see* Statement of Errors at 5 n.3, a facsimile confirmation at the top of Dr. Bugbee's opinion indicates that it was sent on November 23, 2016, and the opinion appears subsequent to those of Dr. Arabadjis in the record, *see* Record at 540. It is a fair assumption that the opinion was written on or about that date.

The ALJ gave "limited weight" to the portion of the Shinn opinion in which Dr. Shinn assessed the plaintiff's ability to walk, stand, and sit, which was based on the plaintiff's reporting and cited no "objective measures[,]" "great weight" to the portion in which Dr. Shinn indicated that the plaintiff could "lift up to 20 pounds and rotate her neck occasionally and ha[d] no manipulative limitations[,]" and "little weight" to the portion in which Dr. Shinn indicated that the plaintiff would miss more than four days of work per month. *Id*. at 87.

The ALJ gave "great weight" to the First Arabadjis Opinion, which was "consistent with the light exertional level with some additional reaching limitations, especially of the non-dominant left upper extremity[,]" contained no postural limitations, and indicated that the plaintiff "could tolerate no more than occasional exposure to vibration and no more than frequent exposure to moving mechanical parts" and "could no more than occasionally move her neck." *Id*. (citation omitted). He explained that "the limitations presented are supported by a narrative discussion[,]" Dr. Arabadjis was "a specialist in the field of Physiatry, who ha[d] treated the [plaintiff] since December of 2015[,]" and the opinion was "consistent with the [plaintiff]'s positive response to treatment and physical examination findings." *Id*.

The ALJ gave "little weight" to the Second Arabadjis Opinion, explaining that it was submitted "only a week after . . . his first opinion that was supported by a narrative discussion[,]" was "based solely from the [plaintiff]'s subjective reporting without any citations to any objective medical evidence[,]" and was "entirely inconsistent with her activities of daily living, such as driving, and her positive response to treatment." *Id*. He noted that, as Dr. Arabadjis had stated in his revised assessment, the plaintiff had "described a 'significant benefit' from Botox injections." *Id*.

Finally, the ALJ gave "little weight" to the Bugbee opinion, which "state[d] [that] the [plaintiff was] incapable of full-time employment[,]" because, "[w]hile the [plaintiff] sees Dr. Bugbee on a regular basis, his opinion consists mostly of the [plaintiff]'s subjective complaints and vague statements about her inability to work, which is a determination reserved to the [c]ommissioner (Social Security [Ruling] 96-5p)." *Id*. He added that even Dr. Bugbee "admit[ted] in his opinion that the [plaintiff] has the ability to escort others to their appointments" and that his opinion was "not consistent with the other opinion evidence in the record that states that the [plaintiff] can perform at the light exertional level, with some manipulative and environmental limitations, and range of motion of the neck deficits." *Id*.

### B. Analysis

The plaintiff contends that the ALJ failed to supply the requisite good reasons for rejecting both the Second Arabadjis Opinion and the Bugbee opinion, having ignored factors that supported them and supplied insufficient and/or factually inaccurate rationales for discounting them. *See* Statement of Errors at 8-17; *see also, e.g.*, 20 C.F.R. § 404.1527(c)(2) (the commissioner will "always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's medical opinion").

The commissioner rejoins that the ALJ's resolution of conflicts in the expert opinion evidence is supported by substantial evidence, in that he (i) "accurately recognized that Dr. Arabadjis drafted two contradictory opinions within one week of each other, and . . . supportably credited the opinion that was the most consistent with the evidence of record[,]" and (ii) "permissibly assigned little weight to the opinion of Dr. Bugbee, whose opinion that [the] [p]laintiff could not perform full-time work was entitled to no special significance as it was an opinion on an issue reserved to the [c]ommissioner[,]" and whose "vague statements about [the]

5

[p]laintiff's limited ability to work" the ALJ supportably deemed "inconsistent with her positive response to treatment, her sporadic treatment history, her robust daily activities, and her work activity." Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 11) at 2 (citations omitted). The commissioner has the better argument.

**1. Failure To Recognize Consistency of Second Arabadjis, Bugbee Opinions**

As the plaintiff observes, *see* Statement of Errors at 8, the commissioner's regulations describe the following factors as relevant to the evaluation of medical opinions: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.*, adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others, *see* 20 C.F.R. § 404.1527(c).

The plaintiff first complains that the ALJ erred in discussing the opinions of Drs. Bugbee and Arabadjis in isolation from each other, failing to acknowledge that they supported each other in their agreement that the plaintiff's ability to perform full-time work was far more limited by her cervical dystonia than the ALJ ultimately found. *See* Statement of Errors at 8.

I find no error. First, while an ALJ must explain why a treating source's opinion was not adopted, he or she need not slavishly discuss all relevant factors in doing so. *See, e.g.*, *Tozier v. Berryhill*, No. 1:16-cv-00540-NT, 2017 WL 3331776 at *8 (D. Me. Aug. 4, 2017) (rec. dec., *aff'd* Sept. 11, 2017).

Second, and in any event, the ALJ considered the medical opinions' consistency with the record as a whole and with other medical opinions, deeming (i) Dr. Guie's opinion consistent with the First Arabadjis Opinion, (ii) the First Arabadjis Opinion consistent with the plaintiff's "positive

response to treatment and physical examination findings[,]" (iii) the Second Arabadjis Opinion "entirely inconsistent with [the plaintiff's] activities of daily living, such as driving, and her positive response to treatment[,]" and (iv) the Bugbee opinion inconsistent "with the other opinion evidence in the record that states that the [plaintiff] can perform at the light exertional level, with some manipulative and environmental limitations, and range of motion of the neck deficits." *Id.* at 87. In so stating, the ALJ made clear that he found both the Bugbee opinion and the Second Arabadjis Opinion inconsistent with other substantial evidence of record. In the circumstances, the consistency between those two opinions was not "compelling and highly probative evidence[,]" as the plaintiff contends. Statement of Errors at 8.[3]

### 2. Failure To Give More Weight to Treating Sources

The plaintiff next complains that the ALJ gave no obvious consideration to the status of Drs. Arabadjis and Bugbee as treating sources, whose opinions "are generally entitled to more weight 'since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" Statement of Errors at 9 (quoting 20 C.F.R. § 404.1527(c)(2)) (bracketed material added). She adds that the ALJ ignored the regulatory directive that treating sources be given more weight than nontreating sources when they have "reasonable knowledge" of a claimant's impairments. *See id.*; 20 C.F.R. § 404.1527(c)(2)(ii) ("When the treating source has reasonable knowledge of [a claimant's] impairment(s), [the commissioner] will give the source's medical opinion more weight than [she] would give it if it were from a nontreating source.").

---

[3] The plaintiff separately challenges the ALJ's reliance on her activities of daily living and response to treatment. *See* Statement of Errors at 13-16. However, for the reasons discussed below, I find no error in that reliance.

7

This point, as well, is without merit. The ALJ gave due consideration to this factor, affording the First Arabadjis Opinion great weight in part because Dr. Arabadjis was a specialist in the field of physiatry who had treated the plaintiff since December 2015. *See* Record at 87. As the commissioner argues, *see* Opposition at 4-5, the ALJ reasonably construed the Bugbee opinion as pertaining mostly to the plaintiff's ability to work full-time, an issue that is reserved to the commissioner and, therefore, entitled to no special significance even when the subject of a treating source's opinion, *see* Record at 87, 540; *Bailey v. Berryhill*, No. 2:17-cv-00080-DBH, 2017 WL 6590546, at *9 (D. Me. Dec. 26, 2017) (rec. dec., *aff'd* Feb. 12, 2018) (At bottom, "an opinion that a claimant can work only part-time implicates the overarching question of whether a claimant is disabled, an issue reserved to the commissioner with respect to which even opinions of treating physicians are not entitled to controlling weight or special significance.").[4]

### 3. Rejection of Dr. Arabadjis' Correction of First Opinion

The plaintiff next challenges the ALJ's decision to disregard the Second Arabadjis Opinion, asserting that there was no basis in the record to question Dr. Arabadjis's clear explanation that he based his first opinion "on the typical response" to Botox but realized that his description was "erroneous" based on a subsequent lengthy discussion with the plaintiff. Statement of Errors at 10-11 (quoting Record at 539). She asserts that "Dr. Arabadjis made clear

---

[4] The plaintiff points out that Dr. Bugbee addressed not only her inability to work but also her "physical limitations due to her cervical dystonia," which constitutes a "medical opinion[,]" that is, a statement "about the nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." Statement of Errors at 12 (quoting 20 C.F.R. § 404.1527(a)(1)) (bracketed material added). Dr. Bugbee, indeed, discussed some of the plaintiff's symptoms and the measures she had taken to relieve them, such as rest, limitation of the use of her neck, and the use of a high-backed chair. *See* Record at 540. However, the ALJ supplied additional reasons for rejecting the Bugbee opinion that constitute good reasons for rejecting even a treating source's medical opinion, including Dr. Bugbee's admission that the plaintiff had the ability to escort others to their appointments and the inconsistency of his opinion with other experts' opinions. *See* Record at 87; *Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018) ("lack of support and inconsistency with other substantial evidence of record" among good reasons for affording treating source opinion little or no weight). The plaintiff separately challenges the ALJ's reliance on the inconsistency of the Bugbee opinion with other opinion evidence of record, *see* Statement of Errors at 16-17; however, I reject that challenge for the reasons discussed below.

8

in his November 14, 2016[,] letter that it, and not the November 7, 2016[,] opinion, represented his assessment of [her] work-related limitations; it should have been treated as such by the ALJ." *Id.* at 11 (emphasis in original).

The plaintiff cites no authority for the proposition that the ALJ was obliged to accept Dr. Arabadjis's modification to his first opinion at face value. *See id.* In the absence of such authority, the ALJ reasonably construed them as clashing opinions, providing good reasons for giving great weight to the first, as discussed above, and little weight to the second, as discussed below.

### 4. Reliance on Role of Plaintiff's Subjective Statements

The plaintiff next contends that the ALJ erred in discounting both the Second Arabadjis Opinion and Dr. Bugbee's opinion because of their purported reliance on the plaintiff's subjective statements. *See* Statement of Errors at 11-12. She argues that the ALJ implies that "Drs. Arabadjis and Bugbee improperly relied on the [plaintiff]'s input without filtering it through the lens of their professional opinion and knowledge of the objective evidence" but that "there is no basis in this record" to make such an assumption. *Id.* at 11 (emphasis in original).

As the commissioner rejoins, the plaintiff's "claim that the ALJ merely speculated that Dr. Arabadjis's second opinion was based on her subjective complaints is belied by Dr. Arabadjis's specific reference to [the] [p]laintiff's 'reports' of her limitations." Opposition at 3 (citations omitted). Indeed, Dr. Arabadjis expressly stated that his modification of his opinion was based on a lengthy discussion with the plaintiff during which, "[d]espite what she reported was significant benefit to her neck pain [from Botox injections], she reports that she requires frequent breaks in her physical activity with reclining in a high backed chair every 2 hours and limiting her lifting and carrying to 4 pounds on her best days following the Botox injections." Record at 539. Dr. Arabadjis added, "She also reports requiring frequent position changes throughout her physical

9

activity to minimize the pain with her pain exacerbated by writing and rotating her head to the left" and "therefore must limit her sitting activities with manual tasks to occasional." *Id*.

The commissioner correctly observes that this court "has held that an ALJ may reject treating source opinions based entirely on subjective complaints where the ALJ does not credit the subjective symptom descriptions themselves." Opposition at 3; *Valerie R. v. Berryhill*, No. 1:17-cv-00469-DBH, 2018 WL 5255229, at *4 (D. Me. Oct. 21, 2018) (rec. dec., *aff'd* Nov. 26, 2018) ("[T]he fact that a treating source has predicated his or her opinion at least in part on a claimant's unreliable or inconsistent subjective statements constitutes a good reason for assigning it less weight.").

As the commissioner notes, *see* Opposition at 3, the plaintiff did not separately challenge the ALJ's partial discrediting of her subjective statements, *see* Record at 83-86; Statement of Errors at 3-17, thereby waiving that point, *see, e.g.*, *Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("[I]ssues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). The ALJ, thus, properly discounted the Second Arabadjis Opinion in part because of Dr. Arabadjis's sole reliance on the plaintiff's subjective statements.[5]

Turning to the Bugbee opinion, the plaintiff correctly observes that Dr. Bugbee identified his own observations, as well as the plaintiff's subjective statements, in support of his opinion. *See* Statement of Errors at 12; Record at 540 ("When I see [the plaintiff] try to use [her neck

---

[5] At oral argument, the plaintiff's counsel acknowledged that the statement of errors contains no separate challenge to the ALJ's handling of his client's subjective statements but disputed that the point was waived, contending that it is inextricably intertwined with her challenge to the weighing of her treating physicians' opinions. While, pursuant to *Farrin*, the point is waived, to the extent that it is intertwined with the plaintiff's challenge to the ALJ's handling of the opinion evidence, it fails for the same reasons discussed herein.

10

muscles] for any stretch of time, I watch her a) quickly lose stamina and strength, and b) soon develop regular episodic twitches and spasms of neck muscles."). However, the ALJ recognized as much, noting that Dr. Bugbee's opinion consisted "*mostly* of the [plaintiff]'s subjective statements." Record at 87 (emphasis added). The ALJ also provided other good and sufficient reasons for discounting the Bugbee opinion, including that (i) Dr. Bugbee's "vague statements about [the plaintiff's] inability to work" implicated a determination reserved to the commissioner, (ii) Dr. Bugbee admitted that the plaintiff had "the ability to escort others to their appointments[,]" and (iii) the Bugbee opinion was inconsistent with other opinion evidence of record. *See id*.; *see also id*. at 540.

### 5. Reliance on Activities of Daily Living

The plaintiff next challenges the ALJ's reliance on the purported inconsistency of the Second Arabadjis Opinion with her activities of daily living, asserting that her ability to drive three days per week, following which she requires a rest break because of neck pain, is not inconsistent with that opinion and, in any event, a claimant's ability to take care of herself, perform household tasks, and engage in hobbies is not generally considered indicative of an ability to work full-time. *See* Statement of Errors at 13; 20 C.F.R. § 404.1572(c).

However, as the First Circuit has observed, "the drawing of permissible inferences from evidentiary facts is the prime responsibility of the [c]ommissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for the [c]ommissioner." *Coskery v. Berryhill*, 892 F.3d 1, 7 (1st Cir. 2018) (citations and internal punctuation omitted). While a claimant's ability to perform a variety of daily activities "does not necessarily demonstrate that he is able to perform 'light work[,]'" an ALJ may draw "a permissible inference to the contrary" if that inference is supported by substantial evidence. *Id*. at 7-8

11

(upholding ALJ's reliance on activities of daily living when it was not unreasonable to infer that claimant could perform light work based on "his ability to perform household chores, care for a dog, shop for groceries, and engage in other daily activities[,]" and ALJ "did not rely solely on the evidence concerning [the claimant's] daily activities in finding that he did have the capacity to do light work").

The same is true here. The ALJ did not rely solely on the plaintiff's activities of daily living to resolve conflicts in the opinion evidence or, more generally, to find the plaintiff capable of light work with certain limitations. *See* Record at 86-88. And, as the commissioner argues, *see* Opposition at 4, the ALJ reasonably deemed the plaintiff's reported activities, which included helping to care for her elderly parents, working as a caregiver, performing yard work, and gardening, even if performed with some pain, inconsistent with debilitating pain, *see id.* at 77-78, 86, 303, 336, 402, 405-06, 454, 498. In turn, the "inconsistency of [a] treating source's opinion with [a] claimant's activity level" is among good reasons for affording such an opinion little weight. *Day v. Berryhill*, No. 1:16-cv-00593-JAW, 2017 WL 5037454, at *5 (D. Me. Nov. 2, 2017) (rec. dec., *aff'd* Nov. 20, 2017).

### 6. Reliance on Improvement with Treatment

The plaintiff next asserts that the ALJ erred in deeming the Second Arabadjis Opinion inconsistent with her "positive response to treatment." Statement of Errors at 14 (quoting Record at 87). She argues that this was premised on the ALJ's finding that her "neck and groin symptoms have generally responded very well to Botox injection therapy[,]" *id.* (quoting Record at 86), which was "nothing more than an impermissible substitution of the ALJ's lay opinion for that of the experts[,]" *id.* She cites treatment records spanning the period from August 26, 2014, through

12

October 4, 2016, in support of the proposition that the Botox injections "never provided complete relief of her symptoms." *Id*. at 14-16.

Again, however, the ALJ drew a permissible inference, based on substantial evidence, that the plaintiff had a generally positive response to treatment, including treatment preceding her Botox injections. *See, e.g.*, Record at 86, 297, 350; *Coskery*, 892 F.3d at 7. He also reasonably concluded that the plaintiff's two gaps in treatment, from May 2015 through November 2015 and March 2016 through August 2016, undercut reliance on the Second Arabadjis Opinion. *See* Record at 85; *Irlanda Ortiz v. Sec'y of Health & Human Servs*., 955 F.2d 765, 769 (1st Cir. 1991) (viewing gaps in medical treatment as "evidence" that claimant's pain was not as intense as alleged); Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2018) ("SSR 96-7p"), at 139 (An "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints[.]").

I find no error in the ALJ's partial reliance on the plaintiff's positive response to treatment in assigning greater to weight to some expert opinions and less weight to others, including the Second Arabadjis Opinion.

### 7. Reliance on Inconsistency with Other Opinion Evidence of Record

The plaintiff finally argues that the ALJ erred in rejecting the Bugbee opinion in part because of its purported inconsistency with other opinion evidence of record. *See* Statement of Errors at 16-17. She contends that the First Arabadjis Opinion was not inconsistent evidence because it no longer constituted Dr. Arabadjis' opinion, as modified by the Second Arabadjis Opinion, and the Guie opinion was not inconsistent evidence because the ALJ's reliance on it was misplaced. *See id*. She asserts that, because Dr. Guie did not have the benefit of review of nearly 225 pages of later-submitted evidence, including the opinions and treatment notes of Drs. Bugbee

13

and Arabadjis, Dr. Guie's opinion could not constitute substantial evidence of her RFC. *See id*.; *see also, e.g.*, *LaFlamme v. Colvin*, No. 1:14-cv-57-DBH, 2015 WL 519422, at *8 (D. Me. Feb. 6, 2015) ("This court has noted that there is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC, although factors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the [ALJ].") (citation and internal punctuation omitted).

For the reasons discussed above, the ALJ reasonably treated the Arabadjis opinions as separate, conflicting opinions, electing to give great weight to the first one. That opinion, in turn, is inconsistent with the Bugbee opinion.

As the commissioner notes, *see* Opposition at 6, in according great weight to the Guie opinion, the ALJ expressly found that later-submitted evidence did not support greater limitations than she assessed, *see* Record at 87. The plaintiff does not explain how that later-submitted evidence would "necessarily have altered [the agency nonexamining consultant's opinion] in a manner more favorable to the plaintiff." *Brigham v. Colvin*, No. 1:15-cv-00433-JHR, 2016 WL 4994990, at *4 (D. Me. Sept. 19, 2016) (citation and internal quotation marks omitted). The ALJ's reliance on the Guie opinion, hence, was not misplaced.[6]

---

[6] The plaintiff contends that, because the ALJ had no legitimate medical basis for rejecting the Second Arabadjis Opinion and relied instead on his own impermissible lay interpretation of the raw medical evidence, he could and should have employed one of numerous options to evaluate the opinions of Drs. Arabadjis and Bugbee properly, including (i) recontacting Drs. Arabadjis and Bugbee for clarification of their opinions, (ii) arranging for a physical examination by an agency examining consultant, (iii) scheduling a review of the record and testimony by a medical expert, and (iv) sending the updated record to an agency nonexamining consultant for review. *See* Statement of Errors at 17-18. Because I find no error in the ALJ's resolution of conflicts in the opinion evidence, I need not and do not reach this point.

14

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 18th day of January, 2019.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge